

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,       )      *Opinion issued April 14, 2020*
)
          Respondent,     )
)
v.                        )      No. SC98268
)
DAVID M. BARNETT,       )
)
          Appellant.      )

**APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY**
The Honorable Joseph L. Walsh, III Judge

David M. Barnett (hereinafter, "Barnett") appeals from the circuit court's judgment sentencing him to two terms of life imprisonment without the possibility of parole pursuant to section 565.020[1] for the first-degree murders of his grandparents. Barnett argues the circuit court erred in overruling his motion to declare section 565.020 unconstitutional as applied to him and sentencing him to two terms of life imprisonment without the possibility of parole for offenses he committed when he was 19 years old because the sentences violate the federal and state prohibition against cruel and unusual punishment. This Court holds

---

[1] All statutory references are to RSMo 1994, the statute in effect at the time of Barnett's offenses, unless otherwise indicated.

section 565.020 is constitutional as applied to Barnett. The circuit court's judgment is affirmed.

## Factual and Procedural History[2]

On February 4, 1996, Barnett walked to his grandparents' home and entered through a bedroom window. Barnett's grandparents were attending Sunday school and church services. When Barnett's grandparents returned home, Barnett confronted them. He pushed his grandmother down a hallway and pushed his grandfather to the floor. Barnett grabbed a knife from the nearby kitchen table and proceeded to inflict ten stab wounds and numerous cuts to his grandfather's neck, face, and hands. Barnett retrieved another knife and began stabbing his grandmother in her neck. Barnett returned to the kitchen to obtain two additional knives and inflicted a total of twelve stab wounds to his grandmother's neck and numerous cuts to her face.

Barnett concealed one of the knives between two mattress pads in a bedroom and washed the blood from his hands. Barnett took approximately $120 from his grandmother's purse and the keys to their vehicle. Before leaving the home, Barnett stood silently over his grandparents to ascertain whether they were still breathing. After determining they were dead, Barnett lowered two window shades, locked the home, and drove away in their vehicle. Police apprehended Barnett the next day, and he confessed to the murders. Barnett was 19 years old.

---

[2] This recitation incorporates portions of *State v. Barnett*, 980 S.W.2d 297 (Mo. banc 1998), *Barnett v. State*, 103 S.W.3d 765 (Mo. banc 2003), and *Barnett v. Roper*, 904 F.3d 623 (8th Cir. 2018), without further attribution.

A jury found Barnett guilty of two counts of first-degree murder, one count of first-degree robbery, and two counts of armed criminal action. Barnett was sentenced to death for each murder count and consecutive life sentences for the robbery and armed criminal action counts. This Court affirmed Barnett's convictions. *State v. Barnett*, 980 S.W.2d 297 (Mo. banc 1998).

Barnett sought post-conviction relief, alleging he received ineffective assistance of counsel when trial counsel failed to investigate and provide the jury with information about his biological mother, her family, and the environmental and genetic factors affecting his development. This Court declined relief on this claim and affirmed the motion court's judgment denying relief. *Barnett v. State*, 103 S.W.3d 765, 768 (Mo. banc 2003).

Beginning in 2004, Barnett embarked on a long course of federal habeas corpus litigation regarding trial counsel's failure to investigate and present mitigating family history evidence during the penalty phase of his trial. Barnett's claims were denied repeatedly until 2013, when the federal district court granted Barnett an evidentiary hearing. After a nine-day hearing, the federal district court issued a 189-page judgment granting Barnett relief from his death sentence. The federal district court ordered the state of Missouri to either sentence Barnett to life without the possibility of probation or parole or grant him a new penalty phase trial. The state appealed. The Eighth Circuit affirmed the federal district court's judgment. *Barnett v. Roper*, 904 F.3d 623 (8th Cir. 2018).

On remand, the state declined to seek the death penalty. Barnett submitted a sentencing memorandum arguing section 565.020 was unconstitutional as applied to him. Barnett contended the principles applied by the United States Supreme Court in its recent

3

criminal jurisprudence concerning juveniles younger than 18 years old applied with equal force to his offenses that occurred when he was 19 years old. The circuit court held a sentencing hearing, rejected Barnett's claims, and sentenced him to life without the possibility of parole on both murder counts. Barnett filed his notice of appeal in the court of appeals, challenging section 565.020's constitutional validity. The court of appeals transferred Barnett's appeal to this Court, which has exclusive jurisdiction. Mo. Const. art. V, sec. 3.

## Standard of Review

All statutes are presumed constitutional. *Lopez-Matias v. State*, 504 S.W.3d 716, 718 (Mo. banc 2016). "Challenges to the constitutional validity of a state statute are subject to de novo review." *State v. Shanklin*, 534 S.W.3d 240, 241 (Mo. banc 2017). This Court will not declare a statute unconstitutional unless it clearly and unambiguously contravenes a constitutional provision. *State v. Pribble*, 285 S.W.3d 310, 313 (Mo. banc 2009). The parties dispute whether Barnett preserved his constitutional claim for review. This Court need not resolve this question because Barnett's claim fails regardless of which standard of review is applied.

## Constitutional Validity of Section 565.020

At the time of Barnett's offenses, section 565.020.2 provided that first-degree murder shall be punishable by "either death or imprisonment for life without eligibility for probation or parole …." Barnett argues the circuit court erred in overruling his motion to declare section 565.020 unconstitutional as applied to him and in sentencing him to two terms of life imprisonment without the possibility of parole for offenses he committed

4

when he was 19 years old. Barnett argues section 565.020 mandating this sentence violates the prohibition against cruel and unusual punishment under the Eighth Amendment and article I, section 21 of the Missouri Constitution. Barnett further argues newly available scientific evidence indicates the justifications the United States Supreme Court relied upon to ban imposing the death sentence and mandatory life without the possibility of parole sentences for offenders younger than 18 years old apply with equal force to offenders who commit crimes at 19 years old because those offenders also display the transient, hallmark features of adolescence affecting risk and impulse control.

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In determining whether a punishment is cruel and unusual, "courts must look beyond historical conceptions to 'the evolving standards of decency that mark the progress of a maturing society.'" *Graham v. Florida*, 560 U.S. 48, 58, 130 S. Ct. 2011, 176 L.Ed.2d 825 (2010) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976)). "In addition to categorically prohibiting cruel and unusual methods of punishment, the United States Supreme Court has construed the Eighth Amendment to prohibit punishments disproportionate to the offense because '[t]he concept of proportionality is central to the Eighth Amendment.'" *State v. Wood*, 580 S.W.3d 566, 589 (Mo. banc 2019) (alteration in original) (quoting *Graham*, 560 U.S. at 59).

This Court succinctly summarized United States Supreme Court precedent concerning punishments for offenders who were younger than 18 years old when the offenses occurred as follows:

5

In the last decade, the Supreme Court has issued a series of opinions concerning the constitutional validity of punishments for offenders who were younger than 18 years of age at the time they committed crimes. In *Roper v. Simmons*, 543 U.S. 551, 578, 125 S. Ct. 1183, 161 L.Ed.2d 1 (2005), the Supreme Court affirmed a holding from this Court that the Eighth and Fourteenth Amendments barred the execution of juvenile offenders. Five years later in *Graham*, the Supreme Court held that the Eighth Amendment barred courts from sentencing juvenile nonhomicide offenders to life without parole. 560 U.S. at 75, 130 S. Ct. 2011. *Graham* was expanded to prohibit homicide juvenile offenders from being subject to a mandatory sentence of life without parole in *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 2464, 183 L.Ed.2d 407 (2012). Most recently, the Supreme Court ruled in *Montgomery v. Louisiana*, --- U.S. ----, 136 S. Ct. 718, 732, 193 L.Ed.2d 599 (2016), that *Miller*'s new substantive rule must be applied retroactively on collateral review for juvenile offenders sentenced to mandatory life without parole.

*Willbanks v. Dep't of Corr.*, 522 S.W.3d 238, 241 (Mo. banc 2017).

In *Roper*, the Supreme Court based its holding in part on the fact juveniles younger than 18 years old differ from adults in three general ways. *Roper*, 543 U.S. at 569. First, juveniles lack maturity and possess "an underdeveloped sense of responsibility," resulting in "impetuous and ill-considered actions and decisions." *Id*. Second, "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." *Id*. Third, a juvenile's character is not as well-formed as an adult, meaning their personality traits are "more transitory, less fixed." *Id*. at 570. The Supreme Court recognized these traits allowed for the "greater possibility … that a minor's character deficiencies will be reformed" and, "as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." *Id*. (quoting *Johnson v. Texas*, 509 U.S. 350, 368, 113 S. Ct. 2658, 1196, 125 L.Ed.2d 290 (1993)). *Roper* then defined a juvenile as an offender younger than 18, explaining,

6

Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn …. The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

*Id*. at 574.

In *Graham*, the Supreme Court acknowledged "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds," including that "[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults." *Graham*, 560 U.S. at 68 (quoting *Roper*, 543 U.S. at 570). However, the Supreme Court reiterated relief from a life without parole sentence for juvenile nonhomicide offenders only applied to juveniles under younger than 18 years old, citing *Roper*'s bright-line age cutoff. *Id*. at 74-75. Likewise, in *Miller*, the Supreme Court echoed *Roper*'s and *Graham*'s distinction between juveniles and adults when barring the imposition of life without the possibility of parole sentencing on juveniles for homicide offenses. *Miller*, 567 U.S. at 471-78.

Barnett argues evolving standards of decency mandate that 19 year olds not be subject to mandatory life without parole sentences. Barnett urges this Court to expand *Roper* and its progeny to apply to 19-year-old offenders because they also display the same traits as those juveniles under 18 years old that were considered in barring the sentences in *Roper* and its progeny. Barnett cites cases from Kentucky, Illinois, Connecticut, and

Washington as examples of cases in which appellate courts have expanded *Roper* and its progeny to apply to offenders beyond 18 years of age. However, this Court does not find these cases persuasive given two of them were not final for purposes of appeal, one is from the federal district court, which is not binding on this Court, and the final case found the sentencing scheme imposed by the legislature did not take *Roper* into account.[3] Barnett also cites other state and federal statutes that characterize 19-year-olds as "youthful offenders" and deserving of special protection. Again, this Court is not persuaded by these non-Missouri statutes in light of Missouri's definition of a juvenile offender.

Barnett further argues this Court should reconsider section 565.020's age cutoff in light of *Hall v. Florida*, 572 U.S. 701, 134 S. Ct. 1986, 188 L.Ed.2d 1007 (2014), in which

---

[3] In Kentucky, a circuit court held the death penalty was a disproportionate punishment for offenders under the age of 21. *Commonwealth v. Bredhold*, No. 14-CR-161 (Fayette Cir. Aug. 1, 2017). However, the Kentucky Supreme Court recently held this issue was not justiciable because the defendant had not been sentenced yet. *Commonwealth v. Bredhold*, No. 2017-SC-000436-TG (Ky. March 26, 2020). In Illinois, the appellate court held imposing a mandatory life sentence on a 19-year-old, who acted as a lookout and was not the actual shooter violated the disproportionate penalties clause of the Illinois Constitution. *People v. House*, No. 1-22-0580, 2019 WL 2718457, at *14 (Ill. App. Ct. May 16, 2019). Barnett concedes neither of these cases is final for purposes of appeal. In Connecticut, the federal district court held *Miller* did not prohibit the court from ruling whether a mandatory life sentence without the possibility of parole was unconstitutional as applied to an 18-year-old offender. *Cruz v. United States*, No. 11-CV-787, 2018 WL 1541898, at *15-16 (D. Conn. March 29, 2018) (unreported op.). Finally, in *State v. O'Dell*, 358 P.3d 359, 364-65 (Wash. 2015), the court remanded the case for resentencing so the circuit court could take the defendant's youth into consideration when determining whether to impose a mandatory life sentence for an offender who committed his crime shortly after his 18th birthday. Significantly, that court determined the legislature failed to take into account *Roper* and its progeny when drafting the sentencing statute to apply to offenders 18 and older. *Id*. at 364. While the Missouri legislature did not have the benefit of *Roper* and its progeny when Barnett murdered his grandparents in 1994, we presume the legislature took these considerations into account when revising the statute in 2016 to require mandatory life sentencing without parole for offenders who are 18 years and older.

the Supreme Court invalidated a Florida death penalty statute setting a bright-line IQ cutoff to determine which offenders were eligible for the death penalty. The Supreme Court struck down the Florida statute because its "rigid rule … creates an unacceptable risk that persons with intellectual disability will be executed, and thus is unconstitutional." *Id*. at 704. Hence, Barnett argues *Hall* demonstrates the constitutional infirmity of drawing a rigid line merely because "a line must be drawn." Barnett argues applying *Hall*'s rationale to *Miller* requires a conclusion that section 565.020's rigid imposition of a mandatory life sentence without the possibility of parole is unconstitutional under *Hall*. This Court disagrees.

*Hall* declined to draw a bright line or explicitly define intellectual disability, leaving that determination to each state. *Hall*, 572 U.S. at 719-20 (citing *Atkins v. Virginia*, 536 U.S. 304, 317, 122 S. Ct. 2242, 2250, 153 L.Ed.2d 335 (2002)). This contrasts with *Roper*, *Graham*, and *Miller*, in which the Supreme Court explicitly stated three times the cutoff between a juvenile and an adult is 18 years of age and limited its holdings accordingly.[4] Finally, *Montgomery* was decided after *Hall* and reaffirmed *Miller*. *Montgomery*, 136 S. Ct. at 726.

---

[4] Further, in *State v. Martin*, 466 S.W.3d 565, 567-68 (Mo. App. S.D. 2015), the Southern District addressed this same issue, holding *Miller* could not be stretched to apply to an offender who was 18 years old at the time of the offense, and *Hall* did not change *Miller*'s controlling status because the offender was not subject to the death penalty or alleging an intellectual disability mitigated sentencing. The Eastern District and Western District have rejected similar claims to expand *Miller*'s prohibition against life without parole sentences to those who were 18 years old at the time of their offenses. *See State v. Bates*, 464 S.W.3d 257, 268-69 (Mo. App. E.D. 2015); *State v. Perdomo-Paz*, 471 S.W.3d 749, 765-66 (Mo. App. W.D. 2015).

Barnett also seeks this Court to declare he should receive individualized sentencing considerations due to his youth. However, in *State v. Hart*, 404 S.W.3d 232, 237-38 (Mo. banc 2013), this Court explained:

> *Miller* does not categorically bar sentencing a juvenile offender who commits first-degree murder to life without parole. Instead, *Miller* holds that such a sentence is constitutionally permissible as long as the sentencer determines it is just and appropriate in light of the defendant's age, maturity, and the other factors discussed in *Miller*.

*Miller* and *Hart* made clear individualized sentencing taking into account age, maturity, and other factors applies *only* when a court is imposing a life without parole sentence to juvenile offenders, which has been defined as those under 18 years of age. Moreover, the Supreme Court explicitly acknowledged the reasoning supporting its judgment about juvenile offenders may be extended to those 18 years of age and older, but it nevertheless set a bright-line age limit of 18 under federal law. Hence, *Roper* does not entitle Barnett to individualized sentencing due to his youth at the time of his offenses.

This Court is guided by Supreme Court precedent, which clearly defines a juvenile as an individual younger than 18 years of age for purposes of the considerations Barnett seeks. Barnett's policy considerations are better addressed to the legislature, which has the authority to amend section 565.020, if it determines Missouri should adopt the prevailing developments in psychology and brain science to expand the definition of juvenile to include offenders older than 18 years of age.

## Conclusion

Section 565.020 is constitutional as applied to Barnett. The circuit court properly sentenced Barnett to two terms of life imprisonment without the possibility of parole for the first-degree murders of his grandparents. The circuit court's judgment is affirmed.

_____
GEORGE W. DRAPER III, Chief Justice

All concur.