STATE of Missouri, Respondent,

v.

Morris CHILDS, Appellant.

No. 62487.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 19, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 19, 1994.

Application to Transfer Denied
June 21, 1994.

Dave Hemingway, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Judge.

Defendant was convicted by a jury of possession of a controlled substance in violation of § 195.202, RSMo Supp.1991, and sentenced to one year imprisonment. Defendant appeals. We affirm.

On July 22, 1991, two St. Louis Police detectives, Lachenicht and Ehrhard, had under surveillance a house at 3342 Ohio in the city of St. Louis. The police were acting pursuant to complaints that crack cocaine was being sold from that house. After observing several suspected drug transactions, the detectives decided to approach the house. Upon seeing the detectives, the occupant of the house, who was in the middle of a transaction, dropped some crack cocaine and retreated into the house. The suspect was subsequently arrested by the detectives.

During this suspect's arrest, the detectives heard a knock on the door. Detective Lachenicht responded "Who is it?" and defendant answered "It's me. I've got the stuff. Let me in." Detective Lachenicht then opened the door. Upon seeing the detective, defendant reached into his pocket and began pulling a plastic bag out of his pocket. Detective Lachenicht immediately grabbed defendant's arm and removed the bag from defendant's pocket. The bag contained fifteen pieces of crack cocaine, which weighed 3.91 grams. Defendant was then advised of his constitutional rights. According to the detectives, defendant told them "You guys caught me with the crack cocaine in my pocket. I was just delivering it to his house." At police department headquarters, defendant agreed to make a written statement, which read:

When the police caught me in the house I had crack cocaine in my pocket. I was taking it into the house at 3342 Ohio.

On appeal, defendant argues that the trial court erred in denying defendant's motion to suppress the drugs seized from his person and statements he made to police. Defendant argues that the detectives lacked probable cause to arrest so they had no right to search him as an incident thereto. We disagree.

■ When reviewing a trial court's ruling on a motion to suppress, we will affirm the ruling if the evidence is sufficient to sustain the trial court's finding. *State v. Blankenship*, 830 S.W.2d 1, 14 (Mo. banc 1992). Upon such review, the facts and reasonable inferences arising therefrom are to be stated favorably to the order challenged on appeal. *Id.*

■ After hearing evidence at the suppression hearing, the motion court made the following finding:

The Motion to Suppress Evidence will be denied because in the opinion of the Court there was probable cause, both for the initial going to the residence, going up to the residence door, going into the premises.

And in addition to that, seizing the Defendant, arresting him at the time after he had made a voluntary statement that he had the stuff, and started pulling from his pocket the material in a cellophane bag. All of that indicates activity on the part of the Defendant, which is probable cause for his arrest, and I believe that the arrest is appropriate and the Motion to Suppress Statements and the Motion to Suppress Evidence in this case are both denied.

■ It is axiomatic that a law enforcement official may make a warrantless arrest if it is based on probable cause. *State v. Landers*, 841 S.W.2d 791, 792 (Mo.App.1992); *State v. Richardson*, 810 S.W.2d 544, 547 (Mo.App.1991). Probable cause for an arrest exists when a police officer has knowledge of facts and circumstances which would lead a prudent person to believe the suspect is committing or had committed an offense. *State v. Spraggins*, 839 S.W.2d 599, 602 (Mo.App. 1992).

Here, the arresting officers had received information that crack cocaine was being sold

from the house at 3342 Ohio. After observing several suspected drug transactions, the officers approached the house and arrested the occupant drug dealer. While in the process of arresting the drug dealer, defendant knocks on the door and says "Its me. I've got the stuff. Let me in." Detective Lachenicht opened the door and defendant reached into his pocket and began pulling out a cellophane bag. Before defendant completely removed the bag from his pocket, Detective Lachenicht grabbed defendant's arm and removed the bag himself.

Defendant's position is that the police officers lacked probable cause to arrest him. Defendant points to each circumstance and argues that it is not enough to establish probable cause. Defendant asserts "Although the police may have been justified in making inquiry of [defendant] about his connection to the house and specifically what he meant by 'stuff', they lacked probable cause to arrest him at that point."

■ The determination of whether probable cause existed at the time of arrest is dependent upon facts and circumstances within the knowledge of the arresting officers. *State v. Singer*, 719 S.W.2d 818, 821 (Mo.App.1986). Consequently, courts should consider the information possessed by the officers at the time of the arrest and the reasonable inferences drawn therefrom. *State v. Jackson*, 686 S.W.2d 21, 23 (Mo.App. 1984). The determination is made upon practical considerations of everyday life on which reasonable persons act, and not on the hindsight of legal technicians. *Id.; State v. Lanear*, 805 S.W.2d 713, 717 (Mo.App.1991).

We agree with the motion court that defendant's knocking on a known drug dealer's door and saying "I've got the stuff", in addition to a visible cellophane bag, indicates a probability of criminal activity on the part of defendant. We find that the police officers had probable cause to arrest defendant.

■ Having found the arrest to be valid, the search and seizure incident to the arrest were valid. Therefore, we need not reach the issue of whether the evidence and defendant's subsequent statements were the fruit of an illegal search and seizure. Point denied.

Defendant alleges in his second point on appeal that the trial court erred in allowing the prosecutor to use arrest records of potential jurors. Defendant alleges that this practice of using arrest records is employed in a racially discriminatory manner and therefore violates his fourteenth amendment right to jury selection procedures unaffected by racial discrimination. We decline to review for reversible error because this issue has not been properly preserved for review.

■ At trial, defendant argued that the prosecutor's use of arrest records in striking venirepersons violated §§ 610.100 and 610.-120 RSMo 1986. This argument lacks merit. "These statutes require such records to be closed 'to the general public' but they are open to defendant for his or her own records and to certain law enforcement agencies. We have held arrest records may be accessed for use in selecting a jury. [Citation omitted]." *State v. Johnson*, 858 S.W.2d 254, 256 (Mo.App.1993); *see State v. Whitfield*, 837 S.W.2d 503, 509 (Mo. banc 1992).

■ Defendant argues on appeal that his fourteenth amendment rights, and also venireperson Chauncey Whitford's fourteenth amendment rights, were violated by the prosecutor's use of arrest records in striking venirepersons. Defendant alleges that it is the practice of the Circuit Attorney's office to run arrest records on black venirepersons in retaliation to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defendant's basis for this allegation are comments made by the trial court in response to the prosecutor's request to reopen voir dire in order to further question certain venirepersons concerning the results of a search of arrest records.

After denying the prosecutor's request, the trial court commented on the difficulty with peremptory strikes since the handing down of *Batson*. In addition, the trial court stated:

> *Batson* compelled the Circuit Attorney's Office to dig for additional reasons to sustain suggestive reasons when certain strikes were made. As a result, in many cases the Assistant Circuit Attorneys will

go back to the office and run individuals who have appeared on the panel. It's been my experience that in most instances they tend to be black persons, because the Circuit Attorney is trying to find reasons to sustain the striking of blacks on peremptory challenges.

In response to this comment, the prosecutor informed the trial court that her background checks were not race motivated and that she ran checks on white venirepersons as well as black venirepersons. The trial court responded:

I don't want to accuse you of running it on the basis of race. I'm saying it has been done, because of the *Batson* problem the State needs reasons to strikes blacks ... I have never yet had it used by the State where they had used the arrest record to strike a white individual, because it doesn't come up, you see? Because the defendant is not objecting to the striking of whites.

After the trial court denied the prosecutor's request to reopen voir dire, defense counsel objected to the running of the names of members of the jury panel, contending they were run for an unlawful purpose in violation of §§ 610.100 and 610.120 RSMo 1986. The trial court overruled the objection and ruled that the prosecutor must provide defense counsel with the information obtained as a result of the background checks.[1]

At no time during the voir dire did defendant object on the basis that the prosecutor's use of her peremptory challenges were racially motivated. In addition, defendant affirmatively chose to waive his *Batson* motion:

At this point I'm not going to make a *Batson* motion, but I believe I'm going to make a motion that in fact the State would have no reason, except for being able to run arrest records, and the record's [sic] to strike Juror Green Evans, and Juror Chauncey Whitford, except for the information that I believe is illegally gotten. It is my opinion, that despite *McMahon*, that these records cannot be used. That

has only been decided by the appellate court. That issue is now before the Missouri Supreme Court.[2]

Since defendant failed to make an appropriate and timely objection, the *Batson* issue is not preserved for review. In accordance with *State v. Sutherland*, 859 S.W.2d 801 (Mo.App.1993), we decline to address this point for plain error. Point denied.

Defendant's third point is that the trial court plainly erred in overruling his objection to the prosecutor's voir dire statements and closing argument that the burden of proof beyond reasonable doubt only applied to the enumerated "elements" in the verdict directors.

■ At trial, defense counsel timely objected to the statements by the prosecutor. However, defense counsel failed to include the objections in the motion for new trial. Defendant's counsel on appeal requests that we review this issue for plain error. Under plain error review, we will grant relief only if the trial court's action resulted in manifest injustice or miscarriage of justice. *Id.; State v. Childers*, 801 S.W.2d 442, 444 (Mo.App. 1990). The appellant bears the burden of establishing that the alleged error resulted in manifest injustice. *Id.*

■ During voir dire, and again during closing argument, the prosecutor told the jurors that the burden of proof beyond a reasonable doubt applied only to the elements of the crime. Defendant's position is that these statements were a misstatement of the law in that they excluded the burden of proof beyond a reasonable doubt from applying to any of the facts not specifically mentioned in the verdict director. Further, since these facts were critical to the jury's determination of whether defendant knowingly possessed cocaine base, the prosecutor's misstatement of the scope of her burden of proof encouraged the jury to disregard doubts based on those facts.

---

1. We agree with the trial court's statement to the prosecutor that if the state is going to run the arrest records of the jury panel, the results of that check must be timely furnished to defense counsel.

2. Our Supreme Court has since decided the issue. *State v. Whitfield*, 837 S.W.2d 503 (Mo. banc 1992).

In *State v. Brown,* 822 S.W.2d 529 (Mo. App.1991), this court addressed this same issue. In that case, the prosecutor told the jury that "only the elements have to be proven to you beyond a reasonable doubt." We held in *Brown* that it is clearly error for the State to define "beyond a reasonable doubt." *Id.* at 530. However, the State may discuss the concept of reasonable doubt without attempting to define it. *Id.* We held that the prosecutor's comment that only the elements have to be proven beyond a reasonable doubt was a discussion of the burden of proof rather than an attempt to define reasonable doubt. *Id.* As such, we found that no error occurred. *Id.* at 531.

In accordance with *Brown,* we find that the prosecutor's alleged erroneous statements did not constitute plain error. Point denied.

Defendant's final claim of error is based on the trial court's use of a jury instruction patterned after MAI–CR3d 302.04 which defines reasonable doubt. Defendant argues that the given definition of reasonable doubt diminished the meaning below the level mandated by due process and § 546.070(4) RSMo 1986. This instruction has been examined by the Missouri Supreme Court and found constitutionally sound. *State v. Ervin,* 835 S.W.2d 905, 924 (Mo. banc 1992). Point denied.

The judgment is affirmed.

GRIMM, P.J., and CARL R. GAERTNER, J., concur.