STATE of Missouri, Plaintiff/Respondent,

v.

Charles BENNETT, Defendant/Appellant.

Charles BENNETT, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 64214, 67390.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 10, 1995.

Douglas R. Hoff, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David G. Brown, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Presiding Judge.

■  Defendant appeals his conviction by a jury for one count of first degree assault, § 565.050, RSMo 1986, and one count of armed criminal action, § 571.015, RSMo 1986. The court sentenced him as a prior and persistent offender to consecutive sentences of life imprisonment for first degree assault and ten years for armed criminal action. Defendant also appeals the denial of his Rule 29.15 motion for post-conviction relief following an evidentiary hearing.[1] We affirm.

The record reveals that on January 7, 1992, about 5:00 p.m., Sister Madeline Carroll, who managed the Parkview Apartment Complex for the Cardinal Ritter Institute, was in her car in the parking lot of the complex preparing to leave. According to Sister Carroll's testimony, she noticed defendant walking toward an area of the parking lot that had recently been rebuilt, and she rolled down her window and told him, "Hey, please don't walk on the fresh cement." Defendant then walked toward the car and shot her in the jaw. As a result of the gunshot, Sister Carroll missed work for seven months and now has a metal replacement jaw, a paralyzed tongue, damaged shoulder muscles, and permanent hearing and speech impairment.

Sister Carroll recognized defendant as a frequent visitor of residents of the apartment complex, and she recalled that a few weeks prior to the shooting, defendant had become angry with her when she asked him and his friend to leave a room containing a pool table

1. Defendant does not address any points in his appeal to the denial of his Rule 29.15 motion. Therefore, that appeal is considered abandoned.

*See State v. Nelson,* 818 S.W.2d 285, 287 (Mo. App.1991).

for residents only. She also remembered that a week or two after the confrontation in the pool room, she saw defendant at a grocery store and he called to her, "Hey, Sister, you let me use your pool room?" and she replied, "No, I'm not."

Mark Marshall and Michael Luaders, drivers for Imo's Pizza, and their manager, Michael Holdman, testified that on January 7th, they were talking in the alley behind Imo's and the Parkview apartments when they heard two gunshots. The three men then saw a man come over the wall between the alley and the Parkview parking lot with his hand tucked inside his black Raiders jacket. Marshall and Luaders got in a car and followed him, and the man ran down the alley and through a gangway. Familiar with the gangway, the Imo's drivers quickly drove around the building and continued to chase the man until they were stopped by the police. After explaining the situation, Marshall and Luaders attempted to find the man but failed. Approximately thirty minutes later, the police brought defendant to Marshall, Luaders, and Holdman, and they identified him as the man they saw in the alley.

Officers Bieniasz and Mader of the St. Louis Police Department testified that they, along with several other officers, found defendant hiding on the third floor of a building near the Parkview apartments. Officer Bieniasz stated that they ordered him to come to the first floor, and defendant complied but made a "furtive movement" on the second floor. Officer Mader testified that he found a .380 caliber automatic pistol behind a screen door on the second floor, and David Ury, an evidence technician for the St. Louis Police Department, testified that the bullets and shell casing recovered at the scene of the shooting came from the weapon recovered by Officer Mader.

■ Defendant presented no evidence at trial. In his principal point on appeal, defendant asserts the trial court erred in overruling his objection to the statements made by the prosecutor during the rebuttal portion of his closing argument because the statements improperly attacked the integrity of defense counsel. During closing arguments, defense counsel argued that the state's evidence was

wrong, untruthful, and mistaken. In rebuttal, the prosecutor argued:

> Ladies and gentlemen, you've been told during Defense counsel's arguments that things are not always what they seem. Ladies and gentlemen, if they aren't what they seem, then where is the evidence of that.[?] The law is clear the Defense does not have to present evidence, but when they've got the gall to get up here and say that every bit of the evidence is wrong and lies and mistakes, then where is the proof of that?

> That kind of argument in opening statement and closing statement is exactly why the Court tells you that nothing that the lawyers tell you is evidence. Because otherwise, let's get up there and make all sorts of stories—

At that point, defense counsel made an objection, which the court overruled.

■ The trial court has broad discretion in controlling closing argument and will only be reversed for an abuse of that discretion. *State v. Anderson*, 886 S.W.2d 742, 746 (Mo. App.E.D.1994). However, it is clear that personal attacks on defense counsel by a prosecutor are improper and objectionable. *State v. McGee*, 848 S.W.2d 512, 514 (Mo. App.E.D.1993).

In *State v. Petary*, 781 S.W.2d 534, 541 (Mo. banc 1989), the prosecutor argued that the defense counsel had told the jury a story and the jury members would have to be magicians to believe him. Our Supreme Court held that this argument was a permissible assertion that the defendant's theory was not supported by the evidence. *Id.*

The prosecutor's argument here is similar to the closing statements made in *Petary*. None of the statements to which defense counsel objected attack her competence or character; rather, the argument urges that her closing argument is not supported by the evidence. Therefore, the trial court did not abuse its discretion in overruling the defendant's objection to the state's closing argument.

Defendant further alleges the trial court erred in overruling his *Batson*[2] objection because the prosecutor's explanations for striking venirepersons Chiles and Williams were not sufficiently race-neutral. At trial, defense counsel made a *Batson* objection and moved to quash the jury panel. The state then offered explanations for each challenge, and after defense counsel challenged the explanations, the court overruled defense counsel's prior motion to quash the jury panel.

In *State v. Parker*, 836 S.W.2d 930, 936 (Mo. banc 1992), decided prior to defendant's trial, the Missouri Supreme Court observed that a motion to quash the jury panel does not redress "the discrimination endured by the excluded venirepersons . . . since they remain wrongfully excluded from jury service." Thus, the proper remedy is to quash the strikes and permit those venirepersons discriminatorily stricken to sit on the jury if they otherwise would. *State v. Grim*, 854 S.W.2d 403, 416 (Mo. banc 1993). A motion to quash the venire is an improper objection for a *Batson* violation and does not properly preserve the issue for appellate review. *State v. Sutherland*, 859 S.W.2d 801, 803 (Mo.App.E.D.1993). Following *Sutherland*, we also decline to address this point for plain error. However, we note that defendant's argument that unemployment is an insufficient race-neutral reason to strike venirepersons is without merit. *See State v. Bell*, 775 S.W.2d 341, 342 (Mo.App.1989) and *State v. Andrews*, 770 S.W.2d 424, 431 (Mo.App. 1989).[3]

Finally, defendant contends MAI–CR3d 302.04, which defines proof beyond a reasonable doubt as proof that leaves one "firmly convinced" of defendant's guilt, does not meet the constitutional standard set forth in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). It is well-settled in Missouri that this instruction is

constitutionally sound. *State v. Griffin*, 848 S.W.2d 464, 469 (Mo. banc 1993).

Judgment affirmed.

KAROHL and WHITE, JJ., concur.

2. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

3. *See also Purkett v. Elem*, 514 U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839 (1995), in which the United States Supreme Court explained that a prosecutor's reason for a peremptory strike need not be "persuasive, or even plausible. 'At this [second] step of the

inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " (Citing *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).