STATE of Missouri, Respondent,

v.

Rodney SMITH, Appellant.

No. ED 73913.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 19, 1999.

Dave Hemingway, Asst. Sp. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Krista D. Boston, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Rodney Smith ("defendant"), appeals the judgment of the Circuit Court of the City of St. Louis, after a jury convicted him of murder in the first degree, section 565.020, RSMo 1994,[1] and armed criminal action, section 571.015. We reverse and remand.

On May 10, 1995, the police found the body of Toriano Burston on the floor of a vacant building. The victim died of multiple gunshot wounds. Defendant and co-

1. All statutory references are to RSMo 1994, unless otherwise indicated.

defendant, Phillip Shaw, ("co-defendant"), were charged with the victim's death. Both were charged by indictment on January 21, 1997, with Class A felony of murder in the first degree, section 565.020, the class A felony of robbery in the first degree, section 569.020, and two counts of the accompanying class A felony of armed criminal action, section 571.015. Both defendant and co-defendant were tried jointly. The jury convicted defendant of murder in the first degree and armed criminal action, and acquitted him of robbery in the first degree. The court sentenced the defendant to two terms of life imprisonment without the possibility of parole or probation. The sentences are to run consecutively. The defendant appeals.

The defendant raises five points on appeal. Because the first point is dispositive of the case, we need not address the remaining points raised by the defendant. Defendant argues that the trial court erred in denying his challenge to the prosecutor's discriminatory use of her peremptory strikes against venireperson, D. M., based on her race and gender. We agree with the defendant that D.M. was peremptorily struck by the State because of her gender.

▮ An appellate court will reverse the trial court's decision on *Batson* challenges only upon a showing of clear error. *State v. Barnett*, 980 S.W.2d 297, 302 (Mo.banc 1998). In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) the U.S. Supreme Court prohibited peremptory strikes based on race. After *Batson*, this court reversed and remanded a conviction for assault in the first degree and armed criminal action because the State utilized its peremptory jury challenges in a racially discriminatory fashion. *State v. Holman*, 759 S.W.2d 902, 903 (Mo. App. E.D.1988). *See also, State v. Price*, 763 S.W.2d 286 (Mo.App. E.D.1988) (reversed and remanded a conviction of capital murder and two counts of assault in the first degree because of a *Batson* violation).

In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the U.S. Supreme Court extended the *Batson* prohibition to peremptory strikes based on gender. In *J.E.B.*, the Court held that the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case solely because that individual happens to be a male or a female. *Id.* at 146, 114 S.Ct. 1419. The Court noted that:

> Discrimination in jury selection, whether based on race or on gender, causes harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process. The litigants are harmed by the risk that the prejudice that motivated the discriminatory selection of the jury will infect the entire proceedings.... The community is harmed by the State's participation in the perpetuation of invidious group stereotypes and the inevitable loss of confidence in our judicial system that state-sanctioned discrimination in the courtroom engenders.

*Id.* at 140, 114 S.Ct. 1419. The Court further stated that:

> When state actors exercise peremptory challenges in reliance on gender stereotypes, they ratify and reinforce prejudicial views of the relative abilities of men and women. Because these stereotypes have wreaked injustice in so many other spheres of our country's public life, active discrimination by litigants on the basis of gender during jury selection 'invites cynicism respecting the jury's neutrality and its obligation to adhere to the law.' *Powers v. Ohio*, 499 U.S. [400] at 412, 111 S.Ct., [1364] at 1371[, 113 L.Ed.2d 411 (1991)].

*Id.*

After *J.E.B.*, Missouri extended *Batson* prohibition to peremptory strikes based on gender bias. *State v. Hayden*, 878 S.W.2d 883, 885 (Mo.App. E.D.1994). We noted

that "the substance and procedures established by the Batson line of cases are equally applicable to challenges made to peremptory strikes based on gender bias." *Id.*

In Missouri, if the defendant wishes to challenge the State's peremptory strike, the appellant must first raise the challenge by identifying the cognizable protected group to which the venireperson belongs. *Barnett*, 980 S.W.2d at 302. The State must then provide an explanation that is neutral as to race or gender for striking the venireperson. *Id.* The burden then shifts to the defendant to show that the State's explanation was pretextual and that the strike was actually motivated by the venireperson's race or gender. *Id.* "A legitimate reason for exercising peremptory challenges is not one 'that makes sense' but one 'that does not deny equal protection.'" *State v. Smulls*, 935 S.W.2d 9, 15 (Mo.banc 1996) (citing *Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995)). "Crucial to the analysis is whether similarly situated white venirepersons escaped the state's challenge." *State v. Weaver*, 912 S.W.2d 499, 509 (Mo.banc 1995). Similarly, crucial to our analysis is whether similarly situated male venirepersons escaped the State's challenge.

In our case, during jury selection, the defense counsel objected to the prosecutor's peremptory strike of venireperson, D.M. and the following occurred:

[DEFENSE COUNSEL]: Next one, Judge, is [D. M.], a black female, page 6, number 2.

[PROSECUTOR]: Reason I struck [D. M.], and if you'll look, it's the same, also strike other teachers. She works for the Board of Education. She is an educator. She's 41, prime age for the mother of these defendants, in addition to presently working with children.

[DEFENSE COUNSEL]: If I can have a second to see if I can find anybody similarly situated.

[PROSECUTOR]: I know there was at least one other one. *I believe it was [P.B.], [P.B.] on page 2, who was a teacher to the same age group as Ms. -- the one we were just talking about.* And she is a white woman who teaches the same age, also a teacher with the school district.

THE COURT: And you struck her as well.

[PROSECUTOR]: Yes.

[DEFENSE COUNSEL]: And I point out in [N.F.] a white male, Juror 1528 who's been a teacher for 21 years was not struck by the State.

[PROSECUTOR]: *Male, Exactly.* I said -- I said *not of the mothering age.* My *biggest concern* if you look at the baby-faced defendant is that *the women are going to be the ones who hung us up on this child.*

[DEFENSE COUNSEL]: I think Batson also goes to gender, so I would again move to disallow the strike based on the gender laws of Batson.

THE COURT: Apparently Batson demands that we be blind as to maternal instincts of potential jurors, [PROSECUTOR], according to what [DEFENSE COUNSEL] says.

[PROSECUTOR]: I don't think that's exactly right, Judge. I think if you have a woman who is of the age to be the mother of the defendants, and age is going to be an issue in this case. Maybe if that was the only factor, but it isn't . . .

THE COURT: I will allow the strike.

[PROSECUTOR]: . . . [f]or gender that is.

THE COURT: I will allow the strike the strike over the objection of both counsel for the defendants. I will allow the strike as race and gender neutral.

(emphasis added).

The reasons given by the prosecutor established that her use of the peremptory challenge to strike D.M. was based upon

her gender as a female. The prosecutor struck D.M. and left N. F., a white male on the jury panel. The initial reason the prosecutor gave for striking D.M. was because she was a teacher. D.M. taught kindergarten through fifth grade. However, N. F., who was not struck by the prosecutor, taught high school students who were closer to the age of both defendants.[2] When the defense counsel pointed out N. F., the similarly situated male, the prosecutor stated: "Male, Exactly.... My biggest concern if you look at the baby-faced defendant is that the women are going to be the ones who hung us up on this child."

The next reason given by the prosecutor for striking D.M. was because she was of the prime age to be the mother of these defendants. D.M. was forty-one years old at the time of trial. N.F. was forty-nine years old at the time of trial. Both D.M. and N.F. are capable of being the parents of these two defendants. In as much as the prosecutor notes that D.M. was of the 'mothering age', nothing in the record suggests that N.F. is not of the 'fathering age' of these two defendants.

In addition, the prosecutor's purported reason that age is a factor in this case is pretextual. After the defense objected to the prosecutor's strike of D. M., the prosecutor, in her defense, stated that she also used one of her peremptory strikes against a white female teacher (P. B.), similar in age to D.M. The record indicates that P.B. was forty-nine years old, the same age as N.F. Thus, if age was the real factor, she could have struck N. F., as she did with P. B.

We find that the State violated *Batson's* prohibition against gender discriminatory peremptory challenges when it struck D.M. and failed to provide a gender-neutral reason for the strike.

2. The defendant was twenty years old and his co-defendant was fourteen years old at the

Based on the foregoing, the judgment is reversed and remanded for a new trial.

PAUL J. SIMON, J., and JAMES R. DOWD, J., concur.

time of the homicide and fifteen years old at the time of trial.