**STATE of Missouri, Respondent,**

v.

**Phillip SHAW, Appellant.**

No. 73907.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 28, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 2000.

Application for Transfer Denied
April 25, 2000.

Nancy L. Vincent, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Krista D. Boston, Asst. Atty. Gen., Jefferson City, for respondent.

CLIFFORD H. AHRENS, Judge.

Defendant, Phillip Shaw, appeals from a judgment on convictions of one count each of first-degree murder and armed criminal action. Defendant claims he was prejudiced by the following trial court errors: (1) admitting an inculpatory hearsay statement; (2) overruling his race and gender *Batson* objections; and (3) permitting the State to misdefine the term "deliberation" as an element of first-degree murder during closing arguments so as to lower its burden of proof on that element. We affirm.

On May 10, 1995, a group of friends was shooting craps in the basement of the residence at 3932 Blaine in urban St. Louis. The group included Eugene Perkins, Keith Macon, Castidel Wooten, and Shaw's codefendant at trial, Rodney Smith. Smith discussed a plan to rob an acquaintance, Toriano Burston, who was expected to join in the craps game later. Burston was known to wear much jewelry and carry cash on his person. Perkins and Wooten agreed to participate in the plan. Their role was to shoot craps with Burston while Smith was hiding. Smith would then emerge and rob Burston.

Burston eventually arrived at the craps game. Shortly thereafter, the group was told to leave the basement, whereupon they decided to relocate their game to a vacant house across the street at 3931 Blaine. At this point, Smith told Perkins he was going to get defendant to assist in the robbery. Perkins, Wooten, and Burston continued the game in the vacant house, where they were joined by newcomers Aubrey Williams and William Ruffin.

Defendant and Smith entered the vacant house through a rear window. Defendant was armed with a .357 caliber handgun, Smith with a .44. Rather than attempting to rob Burston, the two defendants immediately began shooting at him. Burston sustained nine gunshot wounds to various parts of his body. He died from shots to the head and chest. Frank Stubitz, a firearms examiner for the City of St. Louis Police Department, testified that two, possibly three, bullets found in the victim's body were fired from defendant's gun.[1] When the police found Burston's body, his shoes were missing and he was not wearing any jewelry.

Defendant was subsequently arrested and charged with one count of murder in the first degree (Count I), one count of robbery in the first degree (Count III), and two counts of armed criminal action (Counts II and IV, relating to the murder and robbery charges, respectively). Following a joint trial with Rodney Smith as a codefendant, a jury convicted defendant on Counts I and II and acquitted on Counts III and IV. Defendant was sentenced to life imprisonment without parole on Count I with a consecutive term of life without parole on Count II. This appeal followed.

Defendant first argues the trial court abused its discretion in admitting hearsay testimony over his objection. During the State's examination of Eugene Perkins, it elicited testimony concerning Rodney Smith's plan to rob the victim. When asked what, if anything, Smith said about defendant's role in the planned robbery, Perkins responded "[Smith] said he was going to go get [defendant] to help him rob Toriano." Because Smith elected not to testify at trial, as was his right under the Fifth Amendment, defendant

---

1. Frank Stubitz positively identified two of the bullets removed from the victim's body as being .38 caliber. A third bullet was too damaged to be positively identifed, but Stubitz believed it was also a .38. A .38 caliber bullet may be fired from a .357 caliber handgun, the weapon used by defendant, but not from a .44, the weapon used by Rodney Smith.

claims Smith's statement was hearsay, the admission of which violated his right to cross-examine witnesses against him as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 18(a) of the Missouri Constitution.[2]

■ A hearsay statement is an out-of-court statement offered to prove the truth of the matter asserted. *State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997), *cert. denied*, 522 U.S. 871, 118 S.Ct. 186, 139 L.Ed.2d 125 (1997). Hearsay statements are inadmissible unless they fall within a recognized exception to the hearsay rule. *Id.* The admission of a hearsay statement against a criminal defendant violates his or her Sixth Amendment right to confront adverse witnesses unless the statement falls within a firmly rooted exception to the hearsay rule or it contains particularized guarantees of trustworthiness. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *State v. Debler*, 856 S.W.2d 641, 648 (Mo. banc 1993).

■ Smith's out-of-court statement was hearsay because it was offered to prove the truth of the matter asserted, i.e., that defendant actually assisted in the murder of the victim. Missouri courts recognize an exception to the hearsay rule for statements of the declarant's present state of mind.[3] Missouri courts have held this exception allows the admission of a hearsay statement of the declarant's present

intention to engage in future conduct as proof the declarant acted in accordance with that intention, *see, e.g., State v. Newman*, 699 S.W.2d 29, 31 (Mo.App.1985), *Lewis v. Lowe & Campbell Athletic Goods Co.*, 247 S.W.2d 800, 804–05 (Mo.1952), but have not decided whether it allows the same statement to be admitted as evidence of the future conduct of a third party. We need not decide this issue at this time, however, because even if admission of the statement was error, it was harmless error.

■ This court reviews for prejudice and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Richardson*, 923 S.W.2d 301, 311 (Mo. banc 1996), *cert. denied*, 519 U.S. 972, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996). At trial, the State presented two eyewitness accounts of the shooting, both of which identified defendant as one of the shooters. Such incriminating testimony negated any prejudicial effect the out-of-court statement may have had if it was, in fact, improperly admitted. Admission of the statement was, at most, harmless error. Point denied.

■ In defendant's second point, he claims the trial court erred in overruling his "race *Batson*" challenges[4] to the State's peremptory strikes of black venirepersons S.M. and D.W., and his "gender *Batson*" challenges[5] to the State's peremptory strikes of female venirepersons

---

2. The right of cross-examination is included in an accused's right to confront witnesses against him or her. *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In *Pointer*, the United States Supreme Court held this right to be fundamental and therefore obligatory on the States through the Fourteenth Amendment. *Id.* at 403.

3. Both parties agree, as does this court, the statement was not admissible under the co-conspirator exception because it was made prior to the formation of any conspiracy. *See State v. Chernick*, 280 S.W.2d 56, 60 (Mo. banc 1955).

4. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held a criminal defendant's equal protection rights are violated when a prosecutor exercises peremptory strikes to remove potential jurors from the venire solely because of their race or on the assumption their race will disable them from impartially considering the State's case.

5. In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the United States Supreme Court extended the *Batson* doctrine to prohibit the State's use of peremptory challenges to remove potential jurors solely on the basis of gender.

A.R. and D.M. Missouri courts use a three-step procedure when confronted with a purported *Batson* violation. The defendant must first raise a race or gender *Batson* challenge with regard to one or more specific venirepersons struck by the State. The State must then come forward with a reasonably specific and clear race- or gender-neutral explanation for the strike. Finally, assuming the State's explanation is acceptable, the defendant must demonstrate such explanation was merely pretextual and that the strikes were motivated by race or gender. *State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992), *cert. denied,* 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992).

In determining whether the defendant has proven purposeful discrimination, the trial court's chief consideration should be the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case. Any facts or circumstances that detract from or lend credence to the State's proffered explanations are relevant. *Id.* The trial court's determination of the propriety of the strike will not be reversed unless it was clearly erroneous, that is, we are left with a firm conviction that a mistake was made. *State v. Antwine,* 743 S.W.2d 51, 66 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

The State explained it struck S.M. because she was weak on punishment. When asked if she could vote to impose a sentence of life imprisonment without parole, S.M. responded:

> It would be a hard decision for me to make. I am not saying that I couldn't do it.... You know, it would be a hard decision for me to send either one of them to jail for the rest of their life because the penal system is supposed to be there to help them better themselves and give them some kind of guidance and maybe even come out and have a better life. By them both being so young—I am still young myself and I

know I wouldn't want to go away for the rest of my life without being given a second chance, so it would be a difficult decision for me to make.

Defendant points out the State did not strike R.J., a white venireperson he claims was similarly situated to S.M. When asked if he could vote to impose a sentence of life without parole, R.J. responded "It would be hard, but I can do it." The existence of similarly situated white venirepersons who were not struck by the prosecution is certainly probative of pretext. *Parker,* 836 S.W.2d at 940. However, R.J. was not necessarily similarly situated to S.M. Although both expressed concern about imposing the sentence sought, S.M.'s response was equivocal as to whether she could overcome her misgivings, whereas R.J. succinctly stated he could do so. These responses indicate S.M. was more hesitant about imposing the sentence sought than was R.J. This disparity lends credence to the State's explanation that S.M. was weak on punishment. The trial court's decision to allow the strike of S.M. was not clearly erroneous.

The State struck D.W. because he did not respond to questions concerning prior arrests and convictions when in fact he had been arrested for various offenses, one of which was a weapons-related felony. Defendant retorted that the State failed to strike T.F., a white venireperson, who also did not respond to the same question. T.F. had also been arrested on three occasions, albeit for misdemeanors. Because the trial involved the use of a deadly weapon, the State was more troubled by D.W.'s failure to disclose an arrest for a weapons-related offense than by T.F.'s failure to disclose a misdemeanor arrest. We will never know whether the State's concern was provident, but the same can be said of every peremptory strike. The exercise of peremptory strikes is an art, not a science. "[T]he peremptory permits rejection for a

real or imagined partiality that is less easily designated or demonstrable" than the challenge for cause. *Swain v. Alabama,* 380 U.S. 202, 220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Even in the wake of *Batson* and *J.E.B.,* prosecutors remain free to "use horse sense" and "play hunches" in exercising peremptory challenges so long as the factors they rely on are race- and gender-neutral. *Parker,* 836 S.W.2d at 939 n. 8. The State could have reasonably expected D.W. to be biased toward defendant—either consciously or subconsciously—because of their similar criminal backgrounds. The trial court's decision to allow the strike of D.W. was not clearly erroneous.

■■■■■ Defendant failed to preserve his gender *Batson* challenges for appellate review. To preserve a *Batson* challenge, a timely and specific objection must be made at trial, the alleged error must be asserted in a motion for new trial, and the matter must be adequately raised in the briefs on appeal. *State v. Pullen,* 843 S.W.2d 360, 364 (Mo. banc 1992), *cert. denied,* 510 U.S. 871, 114 S.Ct. 200, 126 L.Ed.2d 158 (1993). In the case at bar, defendant did not object to the peremptory strikes of A.R. or D.M. on the basis of gender in his motion for new trial. Such motion provided in relevant part (with emphasis added):

> 15. The trial court erred by refusing to sustain the defendant's motion pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The state exercised peremptory strikes against the following *black* veniremen and the defense challenged the strikes with regard to those veniremen:
>
> \* \* \*
>
> c. [D.M.], juror number 914, black female who the state believed would be overly sympathetic to the defendant because she was a teacher of children his age. The state failed to strike [N.F.], juror number 1528, a similarly situated *white* juror.
>
> d. [A.R.], juror number 360, a black female whom the state mistakenly believed knew the defendant. The state had confused Ms. [R.] with another black female juror who knew the defendant 'from the neighborhood.' Upon being confronted with her mistake, the state then challenged Ms. [R.] by stating that she would identify with the defendant's mother, a single parent. All of which was unsupported by the evidence. The juror was never questioned as to whether she was a single parent and other single parents were left on the panel by the state.

The quoted language raises a race *Batson* challenge. Defendant specifically claimed "[t]he state exercised peremptory strikes against the following *black* veniremen … [emphasis added]" but did not mention any errors regarding the exercise of peremptory strikes based on gender. This is especially true as to D.M., whom defendant argued was similarly situated to a white juror who was not struck. Although this white juror was male, defendant did not emphasize this fact, something we believe he would have done had he truly intended to raise a gender *Batson* challenge at that time rather than as an afterthought on appeal.

■■■■■ The dissent contends it is arguable that defendant preserved his gender *Batson* challenge as to D.M. in his motion for new trial. The dissent relies on the proposition that, where the trial court fully understands the defendant's objection, the form of the motion is not fatal to appellate review. This is indeed the law. *See State v. Starks,* 834 S.W.2d 197, 198 n. 1 (Mo. banc 1992) (improper relief requested); *State v. Winters,* 949 S.W.2d 264, 266 (Mo.App.1997) (improper constitutional provision claimed to have been violated); *State v. Seddens,* 878 S.W.2d 89, 93 (Mo. App.1994) (improper relief requested). In the case at bar, however, what is at issue is not the *form* of the objection, but its *substance.* Although judges and lawyers generically refer to all equal protection violations resulting from the unconstitu-

tional use of peremptory challenges as *Batson* violations, two distinct equal protection classifications are involved: race and gender. *Batson* addresses only impermissible strikes based upon race; *J.E.B. v. Alabama ex rel. T.B.*, on the other hand, addresses the gender counterpart. Therefore, a generic reference to *Batson*, without more, is insufficient to preserve a claim of error based upon a gender-motivated peremptory strike. This is especially true where, as here, the motion specifically references race but not gender. A defendant is not relieved of the obligation to preserve for review claims of error by appropriate means merely because a co-defendant claims the same error.[6]

■■■■ Failure to include a claim of error in a motion for new trial does not preserve that claim for review. Rule 29.11(d); *Pullen*, 843 S.W.2d at 362. We decline to review for plain error because the "failure to make a timely *Batson* objection is fatal to such a claim." *State v. Gray*, 887 S.W.2d 369, 385 (Mo. banc 1994), *cert. denied*, 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). See also *State v. Taylor*, 944 S.W.2d 925, 934 (Mo. banc 1997), and *State v. Sutherland*, 859 S.W.2d 801, 803 (Mo.App.1993), for other cases declining to give plain error review of an unpreserved *Batson* challenge.[7]

■■■ Even if plain error review was appropriate, we would find none. The benchmark of plain error is prejudicial error which so substantially affects the rights of an accused that manifest injustice or a miscarriage of justice inexorably results if left uncorrected. *State v. Miller*, 604 S.W.2d 702, 706 (Mo.App.1980) (citing Rule 30.20). Unfortunately, no talismanic method exists for determining plain error. It is a unique and elusive concept that lacks a fixed dimension, leaving determinations of its existence to be made on a case by case basis so that its scales can be rebalanced each time against particular facts and circumstances. *Id.* at 706. However, Missouri courts have consistently held that no manifest injustice or miscarriage of justice results when guilt is established by overwhelming evidence. *See, e.g., State v. Jordan*, 627 S.W.2d 290, 293 (Mo. banc 1982); *State v. Hurtt*, 509 S.W.2d 14, 15 (Mo.1974); *State v. Pembleton*, 978 S.W.2d 352, 354 (Mo.App.1998).

As emphasized in our analysis of defendant's first point of error, two witnesses identified defendant at trial as one of Toriano Burston's killers. Although defendant's counsel attempted to undermine the credibility of these witnesses, their testimony was not contradicted by other evidence. In light of the severely incriminating nature of this testimony, there is no reason to believe D.M. or another panel of

**6.** The conviction of Shaw's co-defendant, Rodney Smith, was reversed by this court on a finding that the State's strike of D.M. was gender-motivated. Rodney Smith properly preserved this matter for appellate review, however. *See State v. Smith*, 1999 WL 828083 (Oct. 19, 1999).

**7.** The Missouri Supreme Court addressed the issue of plain error review of unpreserved *Batson* challenges in *State v. Sutherland*, 939 S.W.2d 373 (Mo. banc 1997) ("*Roy Sutherland*"). There, the Court conducted a plain error review of the defendant's *Batson* challenge but found none. *Id.* at 380. However, the Court's plain error review was expressly conditioned on the *assumption* such a review was warranted. *Id.* at 379 n. 1. The Court specifically stated its opinion did not address the issue of whether plain error review must

be given in light of this court's declination to do so in the unrelated case of *State v. Sutherland*, 859 S.W.2d 801 (Mo.App.1993) ("*Arlando Sutherland*"). Therefore, we continue to adhere to *Arlando Sutherland*. See *State v. Bennett*, 907 S.W.2d 374, 377 (Mo.App.1995), *State v. Childs*, 876 S.W.2d 781, 784 (Mo.App. 1994), and *State v. Tims*, 865 S.W.2d 881, 884 (Mo.App.1993), for cases where this court has specifically followed *Arlando Sutherland*. See also *State v. Shelton*, 871 S.W.2d 598, 599 (Mo.App.1994), *State v. Tankins*, 865 S.W.2d 848, 853 (Mo.App.1993), and *State v. Williams*, 861 S.W.2d 670, 673 (Mo.App. 1993), for decisions of this court that decline plain error review of an unpreserved *Batson* challenge but do not specifically reference *Arlando Sutherland*.

jurors would have viewed the evidence differently than the twelve that convicted defendant. We find no manifest injustice or miscarriage of justice.

The dissent argues it is manifestly unjust to reverse the conviction of one co-defendant (Rodney Smith) and not the other (Philip Shaw) when the same error affected both. Although this position has not been adopted by either the United States Supreme Court or the Missouri Supreme Court, the dissent finds support in three Ninth Circuit cases and one Seventh Circuit case: *United States v. Baker*, 999 F.2d 412 (9th Cir.1993), *United States v. Ullah*, 976 F.2d 509 (9th Cir.1992), *United States v. Olano*, 934 F.2d 1425 (9th Cir. 1991), and *United States v. Bailey*, 859 F.2d 1265 (7th Cir.1988). These cases are materially distinguishable from the case at bar and are therefore unpersuasive.

Both *Ullah* and *Olano* involve errors in the jury-deliberation process. In *Olano*, the trial court permitted the two alternate jurors to be present during deliberations in violation of Federal Rule of Criminal Procedure 24(c). In *Ullah*, the trial court not only allowed the alternate jurors to be present during deliberations, it allowed them to vote as well, and convicted the two defendants on a verdict which was not unanimous among the twelve regular jurors.[8] In each of these cases, neither defendant preserved his claim of error by proper objection at trial or in a motion for new trial, and only one defendant raised the claim of error in his appellate brief.

In each case, the Ninth Circuit found the trial court to have committed plain error and reversed the convictions of both defendants despite the fact that only one briefed the issue. The court held that if an error is plain error as to one defendant, it is plain error to both defendants, such that it would be manifestly unjust to reverse the conviction of the former but not the latter. *See Ullah*, 976 F.2d at 511–14; *Olano*, 934 F.2d at 1436–39. Because Shaw's co-defendant preserved his claim of error in the present case, this court is confronted with an entirely different issue than that presented to the Ninth Circuit in *Ullah* and *Olano*. The analyses in those cases are therefore inapplicable.

In *Bailey*, two defendants were convicted on insufficient evidence but only one preserved the issue for appeal. The Seventh Circuit held that, where there is insufficient evidence to convict one defendant, it is plain error not to reverse the conviction of a co-defendant whose conviction was based on the same insufficient evidence. *See Bailey*, 859 F.2d at 1273. This is also the law in Missouri. *See State v. McClunie*, 438 S.W.2d 267, 268 (Mo. 1969) ("[I]f evidence is not sufficient to sustain the conviction, plain error affecting a substantial right is involved from which manifest injustice must have resulted."). *See also State v. Nations*, 676 S.W.2d 282, 283 (Mo.App.1984).[9] In the case at bar, however, the sufficiency of the evidence upon which defendant Shaw was convicted is not an issue—there was overwhelming

---

**8.** Ten regular jurors and the two alternate jurors voted to convict, while the two remaining regular jurors voted to acquit. *See Ullah*, 976 F.2d at 511.

**9.** *McClunie* and *Nations* rely on former Rule 27.20(c), which is substantially the same as current Rule 29.12(b) which states: "Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *See* Committe Note accompanying Rule 29.12. Rule 29.12(b) is essentially the same as current Rule 30.20, which specifies that claims of error not properly briefed shall not be consid-

ered on appeal unless the error amounts to plain error, which is defined in the identical language as in Rule 29.12(b). The Missouri Supreme Court has never explicitly explained the relationship between these two provisions, but rather has cited to both when discussing plain error review. *See, e.g., State v. Knese*, 985 S.W.2d 759, 770 (Mo.1999). The Southern District of this court has explained, perhaps properly so, that Rule 30.20 authorizes plain error review by the appellate courts while Rule 29.12(b) authorizes plain error review by trial courts when considering motions for new trial. *See State v. Donnell*, 849 S.W.2d 733, 738 (Mo.App.1993).

evidence of his guilt, thereby precluding any manifest injustice. *See Jordan,* 627 S.W.2d at 293 ("When guilt is established by overwhelming evidence no injustice or miscarriage of justice will result from the refusal to invoke the [plain error] rule.").

Finally, in *Baker,* the Ninth Circuit found that the due process rights of the defendants were violated by the prosecutor's improper comments during closing arguments on their post-arrest silence. The claim of error was preserved by one co-defendant but not the other. The court reversed the convictions of both defendants, finding it manifestly unjust to reverse only the conviction of the defendant who preserved his claim of error when the same error affected both. *See id.* at 413–416. What distinguishes *Baker* from the present case is that the court found the government's case to be weak and entirely based on circumstantial evidence. The court specifically noted that no witness had identified the defendants as the perpetrators. *See Baker,* 999 F.2d at 416. This is in direct contrast with the instant case where the government's case was overwhelming, largely due to the testimony of two witnesses who observed defendant shoot the victim.

 In defendant's final point, he argues the trial court committed plain error when it permitted the State to purportedly misdefine the term "deliberation," an element of first-degree murder, during closing argument.[10] In her summation, the prosecutor recounted the actions of the defendants leading up to the shooting. In doing so, she repeatedly noted several points in time at which they could have elected not to proceed with the crime. For example, "[a]t any point in time he had the option of what? Taking the gun off his hip and not going to the vacant house." The prosecutor then explained the defendants' decision to commit the crime despite having several opportunities

to reconsider constituted deliberation. Defendant claims this explanation amounted to an incorrect definition of that term such that the State's burden of proof on this element was reduced, thereby depriving him of due process and a fair trial. Defendant acknowledges this claim of error is raised for the first time on appeal and likewise requests review for plain error.

 "Deliberation" means "cool reflection for any length of time no matter how brief." Section 565.002(3) RSMo (1994). Thus, deliberation does not require proof the defendant contemplated his actions for a long period of time, and it may be implied from the circumstances. *State v. Ervin,* 979 S.W.2d 149, 159 (Mo. banc 1998), *cert. denied,* 525 U.S. 1169, 119 S.Ct. 1090, 143 L.Ed.2d 91 (1999). Deliberation may be properly inferred where the defendant had ample opportunity to terminate the crime as well as where the victim sustained multiple wounds or repeated blows. *Id.* Here, the State was simply urging the jury to infer deliberation from similar facts present in this case. We find no error in the prosecutor's argument, plain or otherwise.

The judgment of the trial court is affirmed.

RICHARD B. TEITELMAN, P.J., dissents in separate opinion.

LAWRENCE E. MOONEY, J., concurs.

RICHARD B. TEITELMAN, Presiding Judge, dissenting.

I respectfully dissent from the majority decision regarding Defendant's second point on appeal, specifically, his gender *Batson* challenge for venireperson D.M. In the interest of justice and consistency, I would reverse and remand.

**10.** Section 565.020.1 RSMo (1994) sets forth the crime of first-degree murder: "A person commits the crime of murder in the first

degree if he knowingly causes the death of another person after deliberation on the matter."

I

As the majority states, to preserve a *Batson* challenge, a defendant must make a timely objection at trial, must assert the alleged error in his motion for new trial and must adequately raise the matter in his brief on appeal. *State v. Parker,* 836 S.W.2d 930, 935 (Mo. banc 1992) *cert. denied,* 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). Defendant preserved his objection to the State's strike of D.M. by properly objecting at trial and including the allegation of error in his brief on appeal. However, in his new trial motion Defendant raised a generic *Batson* claim and did not explicitly argue that the State had violated gender *Batson.* The majority declines to review Defendant's gender *Batson* claim, then goes on to determine that Defendant suffered no manifest injustice.

It is questionable whether Defendant's gender *Batson* claim was preserved in his motion for new trial.[1] However, assuming, *arguendo* that the claim of error was not preserved, plain error review and reversal

are appropriate in this case in the interest of justice and consistency.[2]

This Court recently heard the appeal of Rodney Smith, Defendant's co-defendant at trial, and reversed his conviction on this precise issue. *See, State v. Smith,* 5 S.W.3d 595 (Mo.App. E.D. 1999). Whether a defendant's conviction should be reversed for plain error after a co-defendant's conviction has been reversed for an identical error is an issue of first impression in Missouri. However, other jurisdictions have held that it is manifestly unjust to reverse the conviction for one defendant and not for another when the point of error affected the rights of both. *See United States v. Baker,* 999 F.2d 412, 416–17 (9th Cir.1993) (due process rights of both defendants were violated, therefore convictions of both reversed even though only one defendant raised the point of error); *United States v. Ullah,* 976 F.2d 509, 514 (9th Cir.1992) ("it is 'manifestly unjust' to reverse the conviction of one co-defendant but to uphold the conviction of

1. "[R]egarding *Batson* challenges, Missouri courts have been lenient with the form of objections and motions." *State v. Winters,* 949 S.W.2d 264, 266 (Mo.App. S.D.1997) (citing *State v. Starks,* 834 S.W.2d 197, 198 n. 1 (Mo. banc 1992)). Moreover, "where the defense attorney clearly intends to assert a *Batson* challenge and the court fully understands the defendant's objection, the form of the motion is not fatal to appellate review." *State v. Seddens,* 878 S.W.2d 89, 93 (Mo.App. E.D. 1994). In *Winters,* the defendant stated the wrong Constitutional grounds for his *Batson* issue in his post-trial motion. The Court held that the defendant's "timely challenge at trial and post-trial motion" preserved the issue for review. In the case at bar, Defendant asserted a *Batson* issue in his motion for new trial. In the sub-paragraph of Defendant's new trial motion referring particularly to venireperson D.M., Defendant identified the similarly situated juror who was not struck (N.F.) by name; N.F. has an unmistakably male first name. Defendant's motion thus specifically denoted both that the similarly situated juror whom the State chose not to strike was white *and* male. Therefore, it is arguable that this issue is sufficiently preserved for review. Indeed, the contention that Defendant failed to preserve his gender *Batson* claim in his motion for new trial is so tenuous that the State did not choose to raise this argument in its

brief on appeal. Regardless of preservation, however, this case should be reversed and remanded on this issue.

2. Though Missouri courts have not yet determined whether plain error review should be given for *Batson* challenges that were not properly preserved, they have, in fact, reviewed this type of unpreserved claim for plain error numerous times. *See, e.g., State v. Sutherland,* 939 S.W.2d 373 (Mo. banc 1997); *State v. Payne,* 943 S.W.2d 338 (Mo.App. E.D. 1997); *State v. Pullen,* 843 S.W.2d 360 (Mo. banc 1992); and *State v. Davis,* 830 S.W.2d 469 (Mo.App. E.D.1992). Missouri courts have remanded plain error *Batson* issues for an evidentiary hearing when the State had not been compelled to give a race-neutral explanation for the challenged venirepanel strikes at trial. *See, State v. Seddens,* 878 S.W.2d 89 (Mo.App. E.D.1994); *State v. Hudson,* 815 S.W.2d 430 (Mo.App. E.D.1991); and *State v. Williams,* 730 S.W.2d 299 (Mo. App. E.D.1987). Further, the Southern District has reversed a conviction on plain error review of a *Batson* challenge after finding that the state "did not come forward with sufficient neutral explanations for peremptory challenging" the black venirepersons at issue. *State v. Tolliver,* 750 S.W.2d 624 (Mo.App. S.D.1988).

another co-defendant when the same error affected both defendants"); *United States v. Olano*, 934 F.2d 1425, 1439 (9th Cir. 1991) ("it would be manifestly unjust" to reverse one defendant's conviction and not the other's when both had "suffered the same prejudice from the same fundamental error in the same trial"), rev'd on other grounds, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); and *United States v. Bailey*, 859 F.2d 1265, 1273 (7th Cir.1988) (though one defendant did not raise sufficiency argument in his opening brief, it is plain error to affirm his conviction while reversing that of another defendant).

In those cases, the courts determined that the conviction of one defendant should be reversed, then held that it would be unjust to not also reverse the conviction of the second defendant.[3] That rationale is applicable to the case at bar. When we reversed Rodney Smith's conviction on this issue, we were bound to follow that determination as precedent. To then find that the same error in the jury selection process that affected Smith's rights did not affect Defendant's rights is plainly erroneous.[4]

Further, neither the trial court nor the State is prejudiced by our consideration of this issue for plain error. The history underlying the rule that points of error must be raised in the motion for new trial is that the trial court should have the last opportunity to correct any errors it made during the trial before review by the appellate court. *See, Brandt v. Csaki*, 937 S.W.2d 268, 275 (Mo.App. W.D.1996). In the case at bar, it cannot be said that the trial court was denied the opportunity to revisit this issue prior to appeal. Both Defendant and his co-defendant at trial, Rodney Smith, raised a gender *Batson* claim regarding the strike of D.M. before D.M. was dismissed from the panel.[5] Smith included a well-drafted gender *Batson* argument in his motion for new trial. The trial court denied the motion, but the conviction was subsequently reversed and remanded by this Court on that issue. *See, State v. Smith, supra.* Given the court's denial of Smith's motion, there is no doubt that further elaboration on the part of Defendant in his motion would have been futile. Plain error review is especially appropriate where the trial court was advised of the alleged error and had ample opportunity to correct its mistake prior to appeal.

## II

When Defendant challenged the State's strike of D.M., the following exchange occurred:

> The litigants are harmed by the risk that the prejudice that motivated the discriminatory selection of the jury will infect the entire proceedings.
>
> *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 140, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).
>
> Thus, the harm that Defendant and D.M. suffered is not overcome by the fact that there was strong evidence of guilt at trial.

**3.** The majority has attempted to distinguish these cases from the case at bar. However, the majority fails to cite any cases from this or another jurisdiction with a contrary holding. In cases that involve fundamental constitutional rights, violations of those rights are no less diminished by the fact that one defendant's motion for new trial is less artfully drafted than another's.

**4.** The majority's analysis regarding a lack of manifest injustice is premised on the fact that there was strong evidence of guilt and ignores the fact that the State violated the constitutional rights of both Defendant and D.M., the excluded venireperson. The Supreme Court has stated:

> Discrimination in jury selection, whether based on race or on gender, causes harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process.

**5.** Notably, the cases cited by the majority for the proposition that "failure to make a timely *Batson* objection is fatal to such claim" are distinguishable, as they involve situations in which a defendant either made no *Batson* objection until the venire panel had been dismissed, or made no *Batson* objection prior to appeal. See *State v. Gray*, 887 S.W.2d 369, 385 (Mo. banc 1994), *cert. denied*, 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995); *State v. Taylor*, 944 S.W.2d 925, 934 (Mo. banc 1997); and *State v. Sutherland*, 859 S.W.2d 801, 803 (Mo.App. E.D.1993).

MS. VAN ARINK: Reason I struck [Ms. M.], and if you'll look, it's the same, also strike other teachers. She works for the Board of Education. She's an educator. She's 41, prime age for the mother of these defendants, in addition to presently working with children.

MS. BEIMDIEK: If I can have a second to see if I can find anybody similarly situated.

MS. VAN ARINK: I know there was at least one other one. I believe it was [P.B.] on page 2, who was a teacher to the same age group as Ms.—the one we were just talking about. And she is a white woman who teaches the same age, also a teacher with the school district.

THE COURT: And you struck her as well.

MS. VAN ARINK: Yes.

MS. BEIMDIEK: And I point out in [N.F.] a white male, Juror 1528 who's been a teacher for 21 years and was not struck by the State.

MS. VAN ARINK: Male, exactly. I said – I said not of the mothering age. My biggest concern if you look at the baby-faced defendant is that the women are going to be the ones who hung us up on this child.

MS. BEIMDIEK: I think Batson also goes to gender, so I would again move to disallow the strike based on the gender laws of Batson.

THE COURT: Apparently Batson demands that we be blind as to maternal instincts of potential jurors, Miss van Arink, according to what Ms. Beimdiek says.

MS. VAN ARINK: I don't think that's exactly right, Judge. I think if you have a woman who is of the age to be the mother of the defendants, and age is going to be an issue in this case. Maybe if it was the only factor, but it isn't.

THE COURT: I will allow the strike.

MS. VAN ARINK: For gender that is.

THE COURT: I will allow the strike over the objection of both counsel for the defendants. I will allow the strike as race and gender neutral.

The State's discriminatory intent is inherent in its explanation. *See Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). The State desired to remove female venirepersons because it feared that they would be more sympathetic to the young defendants. The United States Supreme Court has stated that "[w]e shall not accept as a defense to gender-based peremptory challenges 'the very stereotype the law condemns.'" *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 138, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (citing *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)).

Though the State argued that age was a neutral factor, the record reflects that it failed to strike N.F., a white male teacher of similar age to D.M. This demonstrates that the State's proffered reasons for striking D.M. were pretextual and that the State's actual reason for seeking to remove her is the concern that she would be "hung up" on the "baby-faced defendant." In a well-reasoned opinion, this Court found in *Smith* that "[t]he reasons given by the prosecutor established that her use of the peremptory challenge to strike D.M. was based on her gender as a female." *Smith,* at 597-98.

"[P]lain error includes prejudicial error which so substantially affects the rights of the accused that a 'manifest injustice or miscarriage of justice inexorably results if left uncorrected.'" *State v. Valentine,* 646 S.W.2d 729, 731 (Mo.1983) (quoting *State v. Miller,* 604 S.W.2d 702, 706 (Mo.App. 1980)). It was manifestly unjust for the trial court to allow the State to exercise its peremptory strikes using gender stereotypes.[6] The court plainly erred in sustaining the State's peremptory strike of D.M.

6. Though the majority's argument regarding manifest injustice captures the sentiment of

Justice Scalia's dissent in *Powers v. Ohio,* 499 U.S. 400, 426–27, 111 S.Ct. 1364, 1379–1380,

For the foregoing reasons, I would reverse Defendant's conviction and remand the cause for a new trial.

113 L.Ed.2d 411, I agree with Justice Kennedy's majority opinion in *Powers*.